**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DUSTIN DORSEY** | **CIVIL ACTION** |
| **VERSUS** | **NO:    21-527** |
| **MAGNOLIA MARINE TRANSPORT** | **SECTION: "S" (4)** |

## ORDER

Before the Court is a **MOTION TO QUASH SUBPOENAS DUCES TECUM ISSUED TO AT&T AND REGIONS BANK  (R. Doc. 21)** filed by the Plaintiff seeking to quash subpoenas issued to AT&T and Regions Bank for plaintiff personal information. The motion is opposed. R. Doc. 30. The motion was heard by oral argument on May 11, 2022.

### I.    Background

Plaintiff Dustin Dorsey ("Dorsey") filed this Jones Act suit due to injuries he sustained aboard M/V KATHERINE BERRY. R. Doc. 1. Dorsey names as a Defendant in this matter Magnolia Marine Transport Company ("Magonlia") the owner and operator of M/V KATHEINE BERRY. *Id.*  Dorsey seeks compensatory, special, and general damages for: (1) Past, present, and future physical, mental, and emotional pain and suffering; (2) Past, present, and future loss of wages, fringe benefits, and wage-earning capacity; (3) Past and future physical disability; (4) Past, present, and future medical expenses; (5) Past and future loss of found; and (6) Past, present, and future loss of enjoyment of life. *Id.*

At the time of his injury Dorsey was a green deckhand. According to Dorsey, on August 15, 2020, the captain of M/V KATHERINE BERRY ordered him to work on the tow line alone at night. This was in violation of Magnolia Marine Transport Company's safety policy which called for the task to be performed by deck hands, not green deckhands, and because it called for two crew members to work the tow line. R. Doc. 21-1, p. 2.

1

Dorsey alleges that when he was walking back to the wheelhouse from the tow, he stepped on a barge hatch cover and fell to the deck. *Id.* at p. 3. As a result of the fall, Dorsey contends he sustained injury to his right ankle and back. Dorsey contends that he informed the captain of his back and ankle injuries but was more concerned about his ankle as the injury was more visible and was impacting his ability to walk. *Id.* at p. 4.  He continued to work in the days following his accident. Seven days after his injury Dorsey began receiving treatment with Dr. Lawin, the company physician, for his ankle. He contends that he reported that his back injury to Dr. Lawin, but Magnolia was covertly pressuring her to release him back to work. *Id.*

About four months after his accident, Dorsey then switched his care to Dr. Jason Rudd who Dorsey contends ordered an MRI which showed evidence of muscle spasm or strain related to trauma and a 3mm central herniated nucleus pulposus at L5-S1 contacting the bilateral S1 nerve root. *Id.* at p. 5. Following that MRI, he began receiving treatment from neurosurgeon Dr. Samer Shamieh and pain interventionist specialist Dr. John Crosby. *Id.*

Defendant Magnolia contests Dorsey's contention that he sustained a back injury. R. Doc. 30. Magnolia contends that Dorsey did not report a back injury in documentation immediately following the accident, nor did he report a back injury when he was being treated by Dr. Lawin. *Id.* at p. 3. Magnolia additionally contends that during his deposition, Dorsey acknowledged that his description of the accident causing his injury may have been exaggerated. *Id.* at p. 4.

Magnolia contends that Dorsey testified during deposition that since his injury he has made deliveries for compensation during the since in the incident. Dorsey also asserted that he had to sell personal belongings in order to survive financially since the accident. *Id.* at p. 6. According to Magnolia, Dorsey also testified that prior to the accident he rode his motorcycle daily and

participate in activities like hunting, boarding, and wakeboarding, but after his accident he spends most of his time watching tv, playing video games, and seeing his friends. *Id.*

Magnolia also contends that it has reason to believed that Dorsey representations about his activities post-accident are inaccurate. As such, Magnolia served a subpoena duces tecum to AT&T and Regions Bank. From AT&T, Magnolia seeks:

> Certified copies of all AT&T records and documents pertaining to any accounts held by Dusty Dean Dorsey, including, but not limited to any and all records relating to phone number 601-506-0979 and 601-926-7745 ( and any other phone numbers associated by Dusty Dean Dorsey), including any and all incoming and outgoing call logs, text messages, text message logs, data usage logs, and cell phone location data (including, the latitude and longitude where the call was made) for such phone numbers between August 15, 2020 and the present. R. Doc. 30-5.

> From Regions Bank, Magnolia seeks:

> Certified copies of all Regions Bank or any affiliate thereof, records and documents pertaining to Account number: XXXXXXX, Transit/ABA No.: XXXXXXX and any other checking, savings and credit card accounts held by Dusty Dorsey specifically including but not limited to: all monthly statements, credit card account statements, checking account statements, banking statements, banking/financial information, cancelled checks, deposited checks, financial transfers of any kind, balances, etc. from August 15, 2020 to present. Included in this subpoena duces tecum is a request that you produce any records pertaining to the application for the account(s), signature card for the account(s), and the closure of any account(s) if the account(s) was/were closed. R. Doc. 30-4, p. 6.

Dorsey objects to the subpoenas and filed the subject motion seeking to quash them both. R. Doc. 21. Dorsey contends that the subpoenas are over broad and constitute an abusing and harassing effort by Magnolia to attack his credibility. Dorsey contends that these subpoenas are nothing more than a fishing expedition by Magnolia and they should be quashed by the Court.

## II.  **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 45(d)(3) governs the quashing or modifying of subpoenas. The Court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv).

Subpoenas issued under Rule 45 may be served upon both party and nonparties. *Petit v. Heebe*, No. 15-3084, 2016 WL 1089351, at *2 (E.D. La. Mar. 21, 2016). However, in order to challenge the subpoena, the movant must: be in possession or control of the requested material; be the person to whom the subpoena is issued; or have a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. *See Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *see also Johnson v. Mixon*, No. 13-2629, 2014 WL 1764750, at *4 (E.D. La. May 2, 2014). "Both Rules 45 and 26 authorize the court to modify a subpoena *duces tecum* when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45." *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016).

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity

to obtain the discovery sought; or (3) the proposed discovery is outside of the scope permitted under Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

## II. <u>Analysis</u>

### a. <u>AT&T Subpoena</u>

First, Dorsey seeks to quash the AT&T subpoena. Dorsey contends that the subpoena is overly broad, irrelevant, not proportional to the needs of the case, seeks attorney-client communications, and is an unwarranted, harassing, invasion of privacy. R. Doc. 21-1, p. 9-10.

Magnolia contends that the requested information is relevant to the litigation and discoverable. First, Magnolia concedes that the subpoena is broadly written and that they are only seeking cell location data. Magnolia contends that the location data requested is relevant to establish how Dorsey suffered from the injuries and how it impacted his daily life. *Id*. at p. 13. Magnolia contends that it has obtained information that shows that Dorsey's testimony at his deposition about his post incident activities was not truthful. Magnolia contends that the location data from Dorsey's cell phone will be used to corroborate social media videos and posts showing Dorsey was engaging in activities which contradicts his assertions during his depositions that he spent most of his time at home.

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the proposed discovery is outside of the scope permitted under Rule 26(b)(1). This rule applies to subpoenas issued pursuant to Rule 45 and allows the Court to modify and subpoena is it seeks information outside of the allowable scope of the rules.

In *Winter v. Bissou Marine*, the Court quashed a subpoena seeking billing and usage charges, and all logs of incoming and outgoing calls and texts, and data transfers. No. CIV.A. 13-5191, 2014 WL 3778833, at *2 (E.D. La. July 29, 2014). Defendant in that matter asserted that the records would reflect the frequency and duration of plaintiff's use of the cell phone and therefore will reflect the degree of his impairments after the accident. *Id*. at *3. In quashing the subpoena, the Court reasoned the Defendants arguments for the subpoena information was too tenuous to support a finding that the requested records were relevant to any party's claim or defense. *Id.* The Court therefore found that the subpoena is not reasonably calculated to lead to the discovery of admissible evidence.

In this matter, Defendant contends that it does have evidence, other than the cell phone records, that challenges the accuracy of Dorsey statements about his post-incident activities. During oral argument on this motion, Defendant showed the Court photographs and a video which appear to depict Dorsey engaging in activities like riding his motorcycle post-accident. The Court acknowledges that unlike in *Winter* Defendant have established more than a tenuous connection between the necessity of the cell phone location data. However, as written, the subpoena seeks information that is not relevant and not proportional to the needs of the case. Therefore, the Court finds that the subpoena is overly broad and Plaintiff's motion to quash the subpoena duces tecum issued to AT&T is **GRANTED**.[1]

### b. <u>Regions Bank Subpoena</u>

Dorsey also seeks to quash a subpoena served on Regions Bank by Defendant. The Regions Bank subpoena seeks records and documents pertaining to any checking, savings, and credit card

---

[1] The Court indicated that if Defendant seeks to re-issue the subpoena duces tecum to AT&T seeking only location data it must correlate the temporal scope of the request to three (3) days before and after any social media videos or posts that allegedly depict Dorsey engaging in activity that would contradict a back or ankle injury.

accounts held by Dustin Dorsey including, "all monthly statements, credit card account statements, checking account statements, banking statements, banking/financial information, cancelled checks, deposited checks, financial transfers of any kind, balances, etc. from August 15, 2020 to present." R. Doc. 30-5, p. 6. The subpoena also requested any records pertaining to the application for the accounts, signature card for the account, and the closure of any account if there were any closures. *Id.*

Dorsey contends that this request is an unwarranted invasion of privacy, harassing, overly broad, irrelevant, not proportional to the needs of the case, and is nothing more than a fishing expedition. Dorsey points the Court to *Blanchard v. Circle K Stores Inc,* where the District Court for the Middle District of Louisiana found that the subpoena being challenged widely overstepped the bounds of relevancy set by Plaintiff's claims of injury, lost wages and lost earning capacity. No. 6:19-CV-00856, 2021 WL 4255407, at *2 (W.D. La. Sept. 17, 2021). In *Blanchard,* Defendant asserted that Plaintiff's inconsistent statements regarding her ability to engage in physical activity, as well as sources of income and expenditures made banking records relevant regarding Plaintiff's physical and financial status.

Magnolia contends that the Dorsey's bank records would establish how much Dorsey has earned since the incident. Further, Magnolia contends the banking records will independently demonstrate where Dorsey has been and what he has been doing both of which are relevant to the loss of enjoyment of life claim Dorsey has asserted. Moreover, Magnolia contends that Dorsey's bank records would be used to corroborate social medical posts and videos regarding Dorsey's activities and location.

Magnolia concedes that it has issued supplemental interrogatories asking Dorsey to identify sources of income since the incident, however it believes that due to Dorsey's past inconsistent it should not be forced to rely on his exclusively on Dorsey assertions.

The Court finds that the subpoena served on Regions Bank is overbroad, not proportional to the needs of the case, and likely to uncover irrelevant information. While Magnolia concedes that it has issued some supplemental written discovery, upon further inquiry, the Court finds that Defendant has not exhausted written discovery and instead has issued an overboard subpoena. Therefore, Plaintiff's Motion to Quash the Regions Bank subpoena duces tecum is **GRANTED.**

IV.   <u>**Conclusion**</u>

Accordingly,

**IT HEREBY ORDERED** that Plaintiff's **MOTION TO QUASH SUBPOENAS DUCES TECUM ISSUED TO AT&T AND REGIONS BANK (R. Doc. 21)** is **GRANTED**.

New Orleans, Louisiana, this 28<u>th</u> day of June 2022.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**